## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| MARY BROWN | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No.     07-2556-JWL |
| | ) | |
| YRC WORLDWIDE, INC. | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT

Plaintiff complains against Defendant as follows:

### I.     THE PARTIES

1.     Plaintiff is a citizen of the United States and resident of Platte City, Platte County, Missouri.

2.     Defendant YRC WORLDWIDE, INC. (hereinafter sometimes referred to as "YRC") is, and was at all times relevant herein, a business duly organized to do business within the State of Kansas, is identified by Kansas Corporation ID #7192727; has a place of business situated at or about 10990 Roe Avenue MS A515, Overland Park, Johnson County, Kansas; and was an employer of Plaintiff at all times relevant herein.

### II.     JURISDICTION AND VENUE

4.     The jurisdiction of the Federal Court is invoked because the claims of the Plaintiff arise under the statutes and laws of the United States, namely the Civil Rights Act of 1964, 42 USC 2000e, and the Pregnancy Discrimination Act.

5.      Venue in the United States District Court for the District of Kansas is proper because Kansas is where the claims arose, and where the Defendant is doing business.

## III.   FACTUAL ALLEGATIONS

6.      Plaintiff interviewed with Defendant's Human Resources Management employees Stacy Beecher and Lindsay Jordan, and others, for a position with Defendant on Monday, November 13, 2006.

7.      Plaintiff was four months along with the pregnancy of her second child, but was not showing, at the time of her initial interview with Defendant.

8.      On Thursday, November 16, 2006, Plaintiff received a voice mail from Stacy Beecher with the message being to return the call as Stacy Beecher would like to offer Plaintiff the position.

9.      Prior to being able to return the phone call to Stacy Beecher, Plaintiff received an email on Friday, November 17, 2006, from Ms. Beecher letting her know about the message on her cell phone and requesting Plaintiff call Ms. Beecher at Plaintiff's "earliest convenience".

10.      During the return of Ms. Beecher's phone call, Plaintiff was offered the position, upon which Plaintiff informed Ms. Beecher that a decision to accept the position would be provided to Ms. Beecher by Thursday, November 23, 2006.

11.      On Saturday, November 18, 2006, the day after receiving Ms. Beecher's email and talking on the phone to Ms. Beecher, Plaintiff sent Ms. Beecher an email letting Ms. Beecher know of her pregnancy, and of her desire to take unpaid time off when the baby arrived.

12.     Plaintiff ended her November 18, 2006 email by stating she would not be comfortable accepting the position unless she was "sure that this [unpaid pregnancy leave] would not later inconvenience the department".

13.     On Wednesday, November 22, 2006, after not receiving a response to the email of Saturday, November 18, 2006, Plaintiff sent another email to Ms. Beecher reminding her of the previous email and informing Ms. Beecher she "would like to accept the position".

14.     At no time did Ms. Beecher respond to the request for information about pregnancy benefits posed by Plaintiff in her November 18, 2006 email.

15.     On Friday, November 24, 2006, Ms. Beecher sent an email to Plaintiff sharing with her what needed to be done for her to start with YRC.

16.     On Monday, December 4, 2006, Plaintiff became an employee of YRC.

17.     Soon after starting with YRC, Plaintiff made an inquiry with regard to the unpaid leave referenced in the email of Saturday, November 18, 2006.

18.     In response to her inquiry referenced in the preceding Paragraph, Plaintiff was told she could make request to "Vice President" of Human Resources, which she assumed was Lindsay Jordan.

19.     On Tuesday, January 2, 2007, Plaintiff attended a routine mandatory Individual Development Plan meeting with Ms. Beecher and Ms. Jordan.

20.     After Plaintiff presented her goals and projects which she hoped to accomplish over the coming year, Ms. Jordan commented that the present workload was not a realistic view of how busy things would get, and then followed by stating "you won't be here during the busy season anyway", referring to Plaintiff's pregnancy leave.

21.     On Friday, January 5, 2007, Plaintiff met with Ms. Beecher, who expressed that Plaintiff was not a good fit for the company and was "resistant to the Yellow way".

22.     Ms. Beecher documented her January 5, 2007 meeting with Plaintiff by sending Plaintiff an email on Monday, January 8, 2007 at 7:54 a.m.

23.     In an email dated January 8, 2007 at 11:00 a.m., Ms. Beecher indicated to Plaintiff that she wanted to meet with Plaintiff on Wednesday afternoon.

24.     During the meeting of Wednesday, January 10, 2007, Ms. Beecher mentioned nothing about any performance problems by Plaintiff, indicated Plaintiff "had a productive day working with Sara", and Plaintiff "was doing fine".

25.     During a staff meeting on January 11, 2007, the Human Resources team discussed revisions to one of the company's award programs and during the meeting Ms. Beecher noted that "the only person who got an ACE award this month was [Plaintiff]".

26.     Plaintiff received no other information about being the recipient of the award, and received nothing about the award.

27.     At a separate meeting later in the day on January 11, Ms. Beecher told Plaintiff she was "doing great".

28.     On Monday, January 15, Plaintiff was called to Ms Beecher's office and a meeting occurred between Plaintiff, Ms. Beecher, and Ms. Jordan wherein Ms. Beecher and Ms. Jordan indicated they did not believe Plaintiff was training well, and told Plaintiff "at this point we are going to have to let you go".

29.     Plaintiff requested that she be allowed to submit a letter of resignation to keep the termination off her record, to which Ms. Jordan said that would be fine.

30.     Defendant attempted to deny Plaintiff unemployment benefits by indicating to the Department of Labor that Plaintiff "voluntarily quit for reasons that were not attributable to the job" and that Plaintiff "quit of their [sic] own volition and without good cause".

31.     During the unemployment appeal process, Defendant stated "[t]he claimant voluntarily quit", and "[s]he gave no notice and did not offer a reason for her resignation".

32.     Plaintiff has suffered lost wages, lost benefits, and severe emotional distress due to Defendant's actions.

33.     Plaintiff believes her gender, her pregnancy, and her exercise of rights pursuant to the Pregnancy Discrimination Act were motivating factors in Defendant's decisions and actions regarding her employment.

34.     Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission and received a Right to Sue Letter within 90 days of the filing of this Complaint.

**IV.    PLAINTIFF'S CAUSE OF ACTION FOR VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 USC 2000e AND THE PREGNANCY DISCRIMINATION ACT**

35.     For her cause of action against Defendant YRC, Plaintiff realleges and incorporates the foregoing numbered paragraphs 1-34.

36.     YRC's decision to terminate Plaintiff's employment was motivated by Plaintiff's gender being female, Plaintiff's pregnancy, and leave needed by Plaintiff for the birth of her child.

37.     The Civil Rights Act of 1964, 42 USC 2000e, and the Pregnancy Discrimination Act, prohibit adverse employment actions that are motivated by an employee's gender and prohibit an employer from discriminating against an employee based on pregnancy, childbirth, or related medical conditions.

38.     Plaintiff has suffered extreme emotional distress, lost wages, and economic losses from YRC's discrimination.

39.     YRC's discrimination was intentional and in reckless disregard of Plaintiff's rights.

40.     Plaintiff is entitled to damages for YRC's discrimination, including but not limited to, emotional distress damages, lost wages and benefits, punitive damages and a reasonable attorney's fee.

WHEREFORE, Plaintiff prays for judgment against Defendant in an amount in excess of $100,000, plus punitive damages, reasonable attorney's fees, plus prejudgment and post judgment interest at the maximum rate allowed by law, and for such other and further relief as the Court deems just and equitable.

## VI.     <u>DEMAND FOR JURY TRIAL</u>

Plaintiff hereby demands a trial by jury for the foregoing causes of action.

## VII.    <u>DESIGNATION OF PLACE OF TRIAL</u>

Plaintiff hereby requests that the trial be held at Kansas City, Kansas.

Respectfully submitted:

By:  s/ Patrick G. Reavey                .
          Patrick G. Reavey
          REAVEY LAW LLC
          Livestock Exchange Building
          1600 Genessee, Suite 303
          Kansas City, Missouri 64102
          Phone: 816-474-6300
          Fax: 816-474-6302

ATTORNEY FOR PLAINTIFF