## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

MARY BROWN,

        *Plaintiff*,

vs.

        Case No. 07-2556-EFM

YELLOW TRANSPORTATION, INC.,

        *Defendants.*

## MEMORANDUM AND ORDER

Before the Court is Defendant's Motion for Summary Judgment (Doc. 82). The motion has been fully briefed. For the following reasons, the motion is denied.

### I. Facts

On November 13, 2006, Plaintiff Mary Brown interviewed with Defendant Yellow Transportation, Inc. ("Yellow") for a position as a Human Resource Specialist ("H.R. Specialist"). Two of her interviewers were Lindsay Jordan and Stacy Beecher. Plaintiff was pregnant at the time of her interview but did not disclose her pregnancy at that time.

On Friday, November 17, 2006, Ms. Beecher both e-mailed and called Ms. Brown to extend her an employment offer as an H.R. Specialist. Ms. Beecher made it known that she would be out of the office for Thanksgiving from Monday, November 20th until Friday, November 24th. Ms. Brown responded via e-mail to Ms. Beecher on Saturday, November 18th and told her she would be happy to accept the offer but that she had some questions regarding benefits and work hours.

Specifically, she mentioned that she was expecting the birth of her baby in May 2007, and since she would want to take time off after the delivery of her child, she would not feel comfortable accepting the position unless she was sure that her time off would not inconvenience the department.

Before Ms. Beecher replied to Ms. Brown's initial e-mail, Ms. Brown sent another e-mail to Ms. Beecher on November 22nd, acknowledging that Ms. Beecher was on vacation and accepting the job offer.[1] On November 24, 2006, Ms. Beecher responded via e-mail, addressing Ms. Brown's acceptance of the offer but failing to address her questions about benefits and pregnancy. Ms. Brown received a formal offer letter from Yellow on November 28th, after Yellow had been made aware of her pregnancy.

Ms. Brown began working for Yellow as an H.R. Specialist on December 4, 2006. Ms. Brown and Ms. Beecher discussed Ms. Brown's maternity leave when she started work on that day. After her training, she was to be responsible for administering the hiring process, which includes tasks attendant to hiring and terminating field employees in the Phoenix territory. Yellow began training her as a H.R. Specialist, knowing that Ms. Brown would be away on maternity leave after the birth of her baby.

The details regarding Yellow's standard training for H.R. Specialists and their specific training of Ms. Brown's are in great dispute. Ms. Brown claims that her training significantly differed from that of her peers and she believes that Yellow was intentionally sabotaging her employment. Yellow contends that it provided adequate and consistent training to Ms. Brown and she simply did not satisfactorily progress through training. However, it is undisputed that she

---

[1]Despite Plaintiff's contention in that her e-mail "does not acknowledge that Ms. Beecher was on vacation"(Doc.87), the e-mail clearly opens, "Hi Stacy, I hope that you are enjoying your vacation."(Doc.82, Ex.A).

underwent a period of training that began December 4th and continued until her termination on January 15, 2007.

After she was terminated, Ms. Brown sought and then received a "right to sue" letter from the U.S. Equal Employment Opportunity Commission ("EEOC"). Ms. Brown was granted the right to sue against YRC Worldwide, Inc. ("YRC"), the parent company of Yellow. Ms. Brown filed a complaint against YRC in this Court on November 21, 2007 for employment discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C 2000e and the Pregnancy Discrimination Act ("PDA"), alleging that YRC was her employer at all relevant times.

YRC answered the Complaint on January 24, 2008, denying that it had ever been Plaintiff's employer. After a conference with Defendant, Plaintiff filed an unopposed motion to amend her complaint. The Court allowed the amended complaint and on January 28, 2008, Plaintiff replaced Yellow as her employer and as the Defendant. Yellow, the new Defendant, filed a motion urging the Court to strike the amended complaint arguing that it never agreed to a substitution of parties, simply a replacement of parties and that a substitution was not authorized under Federal Rule of Civil Procedure ("FRCP") 25. However, The Court found that Plaintiff rightly substituted Yellow for YRC under FRCP Rule 21 and allowed a full substitution to occur.

On February 20, 2009, Yellow filed a Motion for Summary Judgment. This motion has been fully and extensively briefed and this Court has reviewed the materials thoroughly and is prepared to rule.

## II. Legal Standards

### A. *Summary Judgment*

Summary judgment is appropriate only if the moving party demonstrates that "there is no genuine issue as to any material fact" and that it is "entitled to judgment as a matter of law."[2] "An issue of fact is 'genuine' if the evidence allows a reasonable jury to resolve the issue either way."[3] A fact is "material" when "it is essential to the proper disposition of the claim."[4] The court must view the evidence and all reasonable inferences in the light most favorable to the nonmoving party.[5] The court cannot evaluate credibility or weigh the evidence.[6]

The initial burden falls on the moving party to demonstrate the absence of a genuine issue of material fact.[7] To meet this standard, the moving party need not disprove the nonmoving party's claim; rather, the movant must simply point out the lack of evidence on an essential element of the nonmoving party's claim.[8]

If the moving party carries its initial burden, the party opposing summary judgment cannot rest on the pleadings but must bring forth "specific facts showing a genuine issue for trial."[9] The

---

[2]Fed. R. Civ. P. 56(c).

[3]*Haynes v. Level 3 Communications*, LLC, 456 F.3d 1215, 1219 (10th Cir. 2006).

[4]*Id.*

[5]*LifeWise Master Funding v. Telebank*, 374 F.3d 917, 927 (10th Cir. 2004).

[6]*Cone v. Longmont United Hosp. Ass'n*, 14 F.3d 526, 533 (10th Cir. 1994).

[7]*Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003)(citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23(1986)).

[8]*Id.* (citing *Celotex*, 477 U.S. at 325).

[9]*Garrison v. Gambro, Inc.*, 428 F.3d 933, 935 (10th Cir. 2005).

opposing party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant."[10] "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein."[11] Conclusory allegations alone cannot defeat a properly supported motion for summary judgment.[12] The nonmovant's "evidence, including testimony, must be based on more than mere speculation, conjecture, or surmise."[13]

Finally, summary judgment is not a "disfavored procedural shortcut," but it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action."[14]

## III. Analysis

Title VII makes it unlawful to discriminate against any individual with respect to terms, conditions, or privileges of employment based on the employee's sex.[15] In 1978, the Pregnancy Discrimination Act amended Title VII and brought pregnancy within the definition of sex discrimination.[16]

We analyze PDA cases under the same analysis that applies to other Title VII claims. A plaintiff may prove discrimination by providing either direct or indirect evidence of discrimination.

---

[10]*Mitchell v. City of Moore, Okla.*, 218 F.3d 1190, 1197 (10th Cir. 2000)(citing *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998).

[11]*Adler*, 144 F.3d at 671.

[12]*White v. York Int'l Corp.*, 45 F.3d 357, 363 (10th Cir. 1995).

[13]*Bones v. Honeywell Intern, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).

[14]*Celotex*, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

[15]Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1).

[16]*See E.E.O.C. v. Ackerman, Hood & McQueen, Inc.*, 956 F.2d 944, 947 (10th Cir.1992) (PDA added to Title VII to prevent the differential treatment of women in all aspects of employment based on condition of pregnancy) (quoting *Carney v. Martin Luther Home, Inc.*, 824 F.2d 643, 646 (8th Cir.1987)).

If direct evidence of discrimination is not found, the *McDonnell Douglas* burden-shifting analysis is applied to the indirect evidence offered.[17] Under the *McDonnell Douglas* analysis, the Plaintiff bears the initial burden of establishing a prima facie case of discrimination.[18] If a prima facie case is established, the burden shifts to the Defendant to show that there is a legitimate, nondiscriminatory reason for the adverse employment action.[19] If a legitimate reason is offered, the burden shifts back to the Plaintiff to show that the proffered explanation is a pretext for unlawful discrimination.[20]

In its Motion for Summary Judgement, Yellow asserts that Plaintiff has shown no direct evidence of discrimination. Next, Defendant argues that Plaintiff's indirect evidence does not establish that Yellow acted with discriminatory intent and that Plaintiff fails to establish a prima facie case. In addition, Yellow claims that even if the indirect evidence established discriminatory intent, that Yellow had a non-discriminatory reason for the adverse employment action and Plaintiff has failed to establish that Yellow's proffered explanations are mere pretext for unlawful discrimination. Finally, Yellow contends that Plaintiff's claims must fail procedurally. The Court will addresses the procedural argument first.

---

[17]*McDonnell Douglas Corp. v. Green*,  411 U.S. 792, 801-805 (1973).

[18]*Id.*

[19]*Id.*

[20]*Id.*

## A. *Procedural Issues*

The Defendant argues that Plaintiff's claim should fail procedurally. Yellow points out that Plaintiff's employment ended on January 15, 2007 and in Kansas, where the state has authority to contest a challenged EEOC employment action, the filing period for a right to sue letter is 300 days. A claim may not be later filed in federal court if a potential plaintiff does not meet this deadline with the EEOC.

Defendant argues that Plaintiff's claim is against Yellow, not YRC, and Plaintiff never properly petitioned for an EEOC right to sue letter against Yellow. Her letter, Yellow claims, was against YRC. Therefore, Yellow says, her claim fails procedurally. This argument runs counter to our case law.

> A Title VII action may proceed against a defendant not named in the EEOC charge where the defendant was informally referred to in the charge or where there is a clear identity of interest between the unnamed defendant and the party named in the EEOC charge to satisfy the intention of Title VII that the defendant have notice of the charge and the EEOC have an opportunity to attempt conciliation. In determining whether an identity of interest exists between the named and unnamed parties, the following factors are considered relevant: (1) whether the role of the unnamed party could, through reasonable effort by the complainant, be ascertained at the time of the filing of the EEOC complaint; (2) whether, under the circumstances, the interests of a named party are so similar as the unnamed party's that for the purpose of obtaining voluntary conciliation and compliance it would be unnecessary to include the unnamed party in the EEOC proceedings; (3) whether the absence of the unnamed party from the EEOC proceedings resulted in actual prejudice to the interests of the unnamed party; and (4) whether the unnamed party in some way represented to the complainant that its relationship with the complainant was to be through the named party.[21]

---

[21]*Collins v. Wal-Mart, Inc.*,  245 F.R.D. 503, 511 (D.Kan.,2007) (quoting  *Romero v. Union Pacific Railroad Co.*, 615 F.2d 1303 (10th Cir.1980).

We find that there is a clear identity of interest between Yellow and YRC. The evidence shows that some of the documents Ms. Brown received from her employer were marked with Yellow while others were marked with YRC. YRC is the parent company of Yellow and the record reflects that they both represented themselves as Plaintiff's employer at various times. No prejudice occurred by the absence of Yellow from the EEOC proceeding and Yellow was put on notice of an impending suit at the same time that YRC was.

Additionally, Defendant argues that a potential Plaintiff has 90 days after the issuance of a right to sue letter to file a claim in federal court. Yellow states that Plaintiff's Amended Complaint, filed on January 28, 2008, doesn't relate back and therefore was filed after the 90 day deadline. However, the law is clearly established that "this Court has on several occasions held in employment discrimination actions that the amended complaint will relate back under Rule 15(c) where the plaintiff intended from the outset to sue his/her employer but mistakenly misnamed that entity in his or her original complaint."[22] We find that to be the situation here and we accordingly allow the Amended Complaint to relate back, thus soundly defeating this argument.

### B. *Direct Evidence of Discrimination*

One way to establish a prima facie case for a Title VII violation is to provide direct evidence of discrimination. "Direct evidence is '[e]vidence, which if believed, proves [the] existence of [a] fact in issue without inference or presumption.'"[23] "To constitute 'direct evidence,' the plaintiff's proof must 'speak directly to the issue of discriminatory intent' and 'it must also relate to the

---

[22]*Id.* at 510.

[23]*Shorter v. ICG Holdings, Inc.,* 188 F.3d 1204, 1207 (10th Cir.1999)(quoting Black's Law Dictionary 460 (6th ed.1990)).

specific employment decision in question.'"[24] Statements as evidence must be made by the actual decision-maker and must speak directly to the issue of discriminatory intent.[25]

After careful review of the record, this Court finds that Plaintiff did not provide any direct evidence of discrimination. There are no statements or other evidence that directly reveal anti-pregnancy animus on the part of any decision-maker at Yellow.

### C. *Indirect Evidence under McDonnell Douglas Burden-Shifting Analysis*

We use the *McDonnell Douglas* framework to analyze indirect evidence in a Title VII discrimination case. "Pursuant to the shifting burden of proof scheme of *McDonnell Douglas* and subsequent cases, plaintiffs must first establish a prima facie case of discrimination."[26] To establish a prima facie case, a plaintiff ordinarily must show "that (1) the plaintiff belongs to some protected class, (2) the plaintiff was qualified for the position or benefit at issue, (3) the plaintiff suffered an adverse employment action, and (4) the plaintiff was treated less favorably than others. . . ."[27]

Plaintiff satisfied the first prong of the test; there is no question that she was pregnant during the time that she was terminated, qualifying her as a member of a protected class. Skipping ahead to the third prong, we find that Plaintiff formally resigned from Yellow only after learning that she was going to be terminated involuntarily. Therefore, Plaintiff suffered an adverse employment action.

---

[24]*Swanson v. Allied-Signal, Inc.*, 1992 WL 223768, 2 (D.Kan. 1992)(quoting *Randle v. LaSalle Telecommunications, Inc.*, 876 F.2d 563, 569 (7th Cir.1989)).

[25]*Id.*

[26]*Sorensen v. City of Aurora*, 984 F.2d 349, 352 (10th Cir. 1993).

[27]*Argo v. Blue Cross and Blue Shield of Kansas, Inc.*, 452 F.3d 1193, 1201 (10th Cir. 2006).

The second and fourth prongs of her prima facie case require some analysis.

**1.** ***Plaintiff has provided evidence that she was otherwise qualified for her position.*** "The relevant inquiry at the prima facie stage is not whether an employee or potential employee is able to meet all the objective criteria adopted by the employer, but whether the employee has introduced some evidence that she possesses the objective qualifications necessary to perform the job sought."[28]

"At the prima facie stage of the McDonnell Douglas analysis, a plaintiff is only required to raise an inference of discrimination, not dispel the non-discriminatory reasons subsequently proffered by the defendant."[29] "A defendant cannot defeat a plaintiff's prima facie case by articulating the reasons for the adverse employment action because the plaintiff in such a situation would be denied the opportunity to show that the reasons advanced by the defendant were pretextual."[30] Therefore, in regards to this summary judgment motion, the question is not whether the movant, Yellow, has produced any evidence that Plaintiff was not performing her duties. Rather, the question is whether the Court can conclude that there is some evidence supporting her claim that she was qualified for the position at the time she was terminated.

Plaintiff began work on Monday, December 4, 2006. Since she was hired after a thorough evaluation, we can assume that she was deemed qualified by her employer on that date. Plaintiff was terminated on January 15, 2007, only twenty-seven business days later. Therefore, we find that Plaintiff has satisfied this second prong of her prima facie case.

---

[28]*E.E.O.C. v. Horizon/CMS Healthcare Corp.*,  220 F.3d 1184, 1193 (10th Cir. 2000).

[29]*E.E.O.C*, 927 F.3d at 1193.

[30]*Id.* (citing *MacDonald v. Eastern Wyo. Mental Health Ctr.*, 941 F.2d 1115, 1118-21 (10th Cir.1991).

**2. *Plaintiff has provided some evidence that she was treated less favorably than others***. In the prima facie stage of a Title VII claim, a plaintiff *can* satisfy the final prong by showing that she was treated less favorably that others similarly situated.[31] However, this showing is not required. "Nothing in the case law in this circuit requires a plaintiff to compare herself to similarly-situated co-workers to satisfy the fourth element of her prima facie case."[32]

This final element can be satisfied in a number of ways. In *Morales* it was satisfied simply by showing that the job from which the plaintiff was terminated was not eliminated. It is clear that she was terminated during her training, while other H.R. Specialists were retained during their own training. Her position was not eliminated. Therefore, we find that Ms. Brown has perfunctorily established this element and each element of her Title VII prima facie case.

**D. *Rebuttal and Pretext under McDonnell Douglas Burden-Shifting Analysis***

"Once plaintiff has established a prima facie case under this theory, the burden of production shifts to defendants to rebut the presumption of discrimination."[33] The defendant can rebut the presumption of discrimination by producing "some evidence that it had legitimate, nondiscriminatory reasons for the decision."[34] The non-discriminatory reasons proffered by the Defendant must be articulated in a "clear and specific" manner.[35] If the Defendant provides a legitimate non-discriminatory reason for the adverse employment action, the burden shifts back to

---

[31]*Argo*, 452 F.3d at 1201.

[32]*Morales v. McKesson Health Solutions*, LLC 136 Fed.Appx. 115, 118 (10th Cir. 2005)(quoting *Horizon/CMS Healthcare Corp.*, 220 F.3d 1184 at 1195 (10th Cir. 2000).

[33]*Drake v. City of Fort Collins*, 927 F.2d 1156, 1160 (10th Cir. 1991).

[34]*Watson v. Fort Worth Bank and Trust*, 487 U.S. 977, 986 (1988).

[35]*Drake*, 927 F.2d at 1160.

the Plaintiff to "prove by a preponderance of all the evidence in the case that the legitimate reasons offered by the defendant were a pretext for discrimination."[36]

Defendant offers as its legitimate, non-discriminatory reasons for terminating Ms. Brown that she was inadequately progressing with her training. Yellow fairly summed up its argument in saying, "Plaintiff was given the same chance to succeed as the other H.R. Specialists and if fact received even two more weeks of training than others hired. Some got it. Some did not."[37]

Since Defendant has provided evidence to clearly and articulately support its legitimate, non-discriminatory reasons for terminating Ms. Brown, the burden shifts back to the Plaintiff to provide evidence that the proffered reasons are pretextual. Plaintiff has met this burden with adequate evidence. The record is voluminous and the Court feels that it is unnecessary to expound on each and every bit of evidence, but for illustrative purposes, we will offer some of the evidence we used in our determination.

Plaintiff alleges that when Yellow found out about her pregnancy it had already informally offered her a position and therefore it felt legally locked into hiring her. Plaintiff claims that Yellow then began to sabotage her training with the intent of terminating her. To support this claim she offers evidence that her training materially differed from the training provided to other new H.R. Specialists. For instance, Plaintiff claims that she was encouraged to train independently. We find adequate testimony from Ms. Brown, her supervisors, and other H.R. Specialists to support that she did indeed spend more time in independent training than her peers and that this was unusual training for H.R. Specialists at Yellow.

---

[36]*Watson v. Fort Worth Bank and Trust*, 487 U.S. 977, 986 (1988).

[37]Doc. 83, p.21-22.

Further, there is conflicting testimony regarding whether Ms. Brown was due, under Yellow's policies, any procedural opportunities for feedback and discipline before her termination. Also, Yellow relies heavily on an argument that Ms. Brown was clearly unqualified because she couldn't be trained within the standard two to four weeks allotted for training new H.R. Specialists. The evidence is conflicting about whether or not there was any official or unofficial expectation of when an H.R. Specialist should "graduate" from training.

After reviewing the record in full, we find that there are genuine issues of material fact regarding pretext and that reasonable fact-finders could come to different conclusions. Therefore, summary judgment is not merited.

### E. *Other Motions*

Also pending is a Motion to Strike Plaintiff's Affidavit[38] and a Motion to Exclude New Facts and Arguments.[39]  These motions are granted.  In ruling on this Motion for Summary Judgment, the Court did not rely on any facts or statements that were contested by either of these two other motions.

**IT IS ACCORDINGLY ORDERED** that Defendant's Motion for Summary Judgment (Doc. 82) is hereby DENIED.

**IT IS FURTHER ORDERED** that Defendant's Motion to Strike (Doc. 97) is GRANTED.

---

[38]Doc. 97.

[39]Doc. 100.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Exclude (Doc. 100) is GRANTED.

**IT IS SO ORDERED**.

Dated this 2nd day of July, 2009, in Wichita, Kansas.


/s Eric F. Melgren
ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE