# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

MARY BROWN,

        *Plaintiffs*,

vs.

YELLOW TRANSPORTATION, INC.,

        *Defendant.*

Case No.07-2556-EFM

## MEMORANDUM AND ORDER

Mary Brown was hired by Yellow Transportation, Inc.[1] (Yellow) as a Human Resource Specialist (H.R. Specialist). Although Ms. Brown was pregnant at the time she interviewed for the position in November of 2006, she did not disclose that fact. However, following receipt of an offer of employment, Ms. Brown notified Yellow that she was pregnant. Before any response to that notification could be made, Ms. Brown sent another email accepting the offered position. She began work on December 4, 2006, and Yellow began her training as an H.R. Specialist. Ms. Brown alleged that once Defendant learned she was pregnant, after it had already extended the employment offer to her, that it didn't want her to take the job because she would be gone on maternity leave

---

[1] At the time Plaintiff was hired, Defendant's corporation name was Yellow Transportation, Inc. Subsequent to the events relevant to this lawsuit, Yellow Transportation, Inc. merged into Roadway Express, Inc., with the resulting corporate entity taking the name of YRC Inc. Although the Court granted Defendant's motion to substitute YRC Inc. for Yellow Transportation, Inc., as the party in this case, both parties continued to refer to the Defendant as Yellow Transportation, Inc. during trial, and that practice will be followed in this order.

-1-

during a busy time. She alleged that Defendant knew it couldn't fire her outright for being pregnant, so it planned for her to fail in her job so that she could be let go on the pretense of cause. Therefore, Plaintiff alleged that her training differed significantly from that of other, non-pregnant peers, due to Yellow's intentional sabotaging of her employment due to her pregnancy. Yellow denied these allegations, and asserted that it provided adequate and consistent training to Ms. Brown who simply did not grasp the training. Ms. Brown was terminated on January 15, 2007. Ms. Brown filed suit, alleging that her termination was due to unlawful discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e and the Pregnancy Discrimination Act.[2]

The case was called for trial before a jury on April 26, 2010. At the close of Plaintiff's evidence, Defendant moved for judgment as matter of law pursuant to Fed. R. Civ. P. 50 on the grounds that the evidence in the case did not support any of Plaintiff's claims and that a reasonable jury therefore could not find in favor of Plaintiff as matter of law.[3] The Court did not grant or deny Defendant's motion, but took it under advisement, noting that Plaintiff's case was "a very slender reed" that the jury would have to "wind through a tortuous path" to find for Plaintiff, and that the Court was not convinced they could.[4] Nevertheless, the case was allowed to proceed to the jury.

On May 3, 2010, the jury rendered a verdict in favor of Plaintiff, finding the Plaintiff had met her burden of proof that Defendant engaged in pregnancy discrimination against her, and awarding

---

[2]In 1978, the Pregnancy Discrimination Act amended Title VII to bring pregnancy within the definition of sex discrimination.

[3]The motion was made orally at the trial, but Defendants also filed a motion electronically (Doc. 175).

[4]Although excerpts of the transcript of this trial have been prepared, a complete official transcript has not been requested by the parties. However, the reporter's "real time" raw data was available to the Court both during trial and for purposes of preparing this order. The Court has reviewed all of the trial's proceedings as recorded and captured by the real time reporting, and though not official the Court is confident that, for these purposes, it is accurate and reliable. The Court will refer to testimony as captured by that data throughout this order, but in the absence of an official transcript is unable to cite to it.

damages of $75,500. The jury declined, however, to award punitive damages, finding that Plaintiff had not met her burden of proof that Defendant acted with malice or reckless indifference to Plaintiff's federally protected right to be free from pregnancy discrimination.

On May 12, 2010, Defendant filed its renewed motion for judgment as a matter of law, or in the alternative, for a new trial (Doc. 186). That motion is fully briefed and now before the Court.

## EVIDENCE AT TRIAL

Plaintiff called several witnesses in support of her case at trial.[5] Plaintiff herself testified that one way in which her training had been deliberately different, and deficient, from that of her peers, was that she was instructed to train "independently." Plaintiff alleged that she was provided with far less personal, one-on-one training than had been provided to other H.R. specialists, in an attempt to impede her efficient and effective acquisition of the skills necessary to succeed in the job. However, Plaintiff testified that the course of independent training was offered to her as an option, and she took it. And she indicated that she was aware of other H.R. Specialists who had trained more independently.

Plaintiff called Stacy Beecher, a Human Resources supervisor for Defendant who had been directly involved in Plaintiff's employment interview, hiring decision, training, and termination decision. She testified that Plaintiff had told her that she trained better individually, and that she would like to train independently, so Ms. Beecher gave her that opportunity. Ms. Beecher testified that many concerns were expressed about Plaintiff's performance, and that she ultimately decided to terminate Plaintiff based solely on performance. She testified specifically that a comment which she had prepared at the time of termination expressed that Plaintiff was not progressing in her

---

[5]Although Defendant also called witnesses during its case in chief, for purposes of this motion, the Court will limit its discussion to testimony from Plaintiff's witnesses.

training nor even an active participant in it, that she apparently lacked desire and willingness to succeed, and that she failed to follow direction. Ms. Beecher testified that she further reported at that time that, after discussing these concerns with Plaintiff, she still did not see progress; Plaintiff still appeared disconnected. Therefore, Ms. Beecher reported that she did not believe that Plaintiff would become a productive member of Defendant's team. At trial, Ms. Beecher testified that she believed she had taken sufficient time to make her evaluation that Plaintiff would not succeed at Yellow, and that she had done so reluctantly since it was personally important to her that Plaintiff, her "first 100% hire," succeed. She affirmed that she believed Plaintiff was provided all the tools and resources she needed to succeed in her training. Ms. Beecher firmly denied that the decision to terminate Plaintiff had anything to do with Plaintiff's pregnancy – asserting that it was not even a factor in their thought process.

Defendants' then Senior Human Resource Manager, Lindsay Jordan , who had been directly involved in Plaintiff's interview, hiring, training, and decision to terminate, testified that she was concerned that Plaintiff did not seem to be getting the big picture from her training, so she sent Plaintiff to Sara Bass, whom Ms. Jordan believed to be an excellent trainer who trained many of the specialists employed at Yellow. Plaintiff called Ms. Bass, who testified that she recalled some specialists, including Plaintiff, who preferred to spend some of their training period independently or alone. Nevertheless, Ms. Bass testified that, from her personal involvement in Plaintiff's training, she believed that Plaintiff was given the same tools, resources, and opportunities that every specialist predating her had been given in terms of learning opportunities, and she did not believe that Plaintiff's training was any different from that received by others she had trained. Nevertheless, Ms. Bass did not believe that Plaintiff succeeded in picking up that information adequately enough

to be successful in the role for which she had been hired. She testified that she was concerned early on about Plaintiff's lack of engagement. She thought that, in comparison to other specialists whose training she had observed and experienced, Plaintiff wasn't picking up the information as quickly as the others had. She did not testify that she believed Plaintiff's pregnancy had anything to do with her termination; rather, she believed it was because even after a normal period of training, Plaintiff was still missing the basic elements of the job, and needed assistance on tasks that are performed repeatedly throughout almost every day.

Lindsay Jordan also testified that she believed Plaintiff received the training it should take for a person to succeed. In response to Plaintiff's counsel's detailed examination regarding the specific days and times that Plaintiff had testified were the only time she received training, Ms. Jordan affirmed that those times provided adequate time to train. Ms. Jordan was unshaken in her assertion that Plaintiff's pregnancy was not in any way the reason she was terminated.

Plaintiff also called Jenny Wilcox, who had trained with Plaintiff the first or second week she was employed. Ms. Wilcox testified that she told Stacey Beecher that Plaintiff was not training properly, wasn't taking notes, and did not seem fully engaged in the training process. Ms. Wilcox testified that from her experience of working with Plaintiff, she was reminded a lot of Dawn Shipman, an H.R. Specialist who had been let go previously (and who was not pregnant).

Plaintiff also called Natalie Frank, another H.R. Specialist. Ms. Frank had no involvement in Plaintiff's training, but she had also become pregnant on the job. She testified that she was never made to feel that her pregnancy was an issue or a problem for the company, nor was anyone ever concerned about her leave. In fact, she testified that Lindsey Jordan was the first person she told that she was pregnant, and that Ms. Jordan was very happy for her.

Plaintiff called Matt Brazeal, a lawyer and manager of employee relations for defendant. Mr. Brazeal testified that he first heard of Plaintiff when he learned that they had hired a candidate who was going to miss some time at work due to her pregnancy. Because this leave would occur before she had earned leave time, Mr. Brazeal had a conversation about other types of leave that Defendant would be able to provide to Plaintiff to cover the period she would need to miss. In the face of vigorous examination from Plaintiff's counsel, Mr. Brazeal adamantly denied that Defendant discussed or considered withdrawing offer because Plaintiff was pregnant, insisting "that's not something Yellow would do" and "it's clearly not something that would even be considered." He testified that it was no big deal for Defendant to make an offer to a candidate who was pregnant and that Defendant had made offers to more than one candidate who was pregnant at the time of the offer. When asked by Plaintiff's counsel of his evaluation of her case, he responded that he believed the case was frivolous and that pregnancy had nothing to do with why plaintiff was let go.

In sum, although Plaintiff called a number of witnesses in her case in chief, none of her witnesses (other than Plaintiff herself) testified that her training was inadequate, none of them testified that they in any way believed that Plaintiff's pregnancy played a factor in her termination, and all of them testified that Plaintiff was not picking up on the training despite having been given adequate time and opportunity to do so. The court does not find it necessary, therefore, to review the testimony from witnesses called by Defendant.

**LEGAL STANDARDS**

1.   <u>Motions for Judgment as a Matter of Law</u>

"A renewed motion for judgment as a matter of law . . . under Fed.R.Civ.P. 50 'may be granted only when, without weighing the credibility of the evidence, there can be but one reasonable

conclusion as to the proper judgment.'"[6]  "Judgment as a matter of law is appropriate 'only if the proof is all one way or so overwhelmingly preponderant in favor of the movant as to permit no other rational conclusion.'"[7]  The movant is entitled to judgment as a matter of law only when "there is no legally sufficient evidentiary basis . . . with respect to a claim or defense . . . under controlling law."[8]  Judgment as a matter of law is appropriate "only when the evidence so strongly supports an issue that reasonable minds could not differ."[9]  Judgment as a matter of law "should be cautiously and sparingly granted" and is "appropriate only when the evidence points but one way and is susceptible to no reasonable inferences which may sustain the position of the party against whom the motion is made."[10]  In considering a motion for judgment as a matter of law, "the court must view the evidence and indulge all inferences in favor of the party opposing the motion and cannot weigh the evidence, consider the credibility of witnesses or substitute its judgment for that of the jury."[11]  "[T]he court must affirm the jury verdict if, viewing the record in the light most favorable to the nonmoving party, it contains evidence upon which the jury could have properly returned a verdict for the nonmoving party."[12]  "Conversely, the court must enter judgment as a matter of law

---

[6]*Aerotech Res., Inc. v. Dodson Aviation, Inc.*, 191 F. Supp. 2d. 1209, 1212-13 (D. Kan. 2002) (quoting *Jackson v. City of Albuquerque*, 890 F.2d 225, 230 (10th Cir. 1989)).

[7]*Id*. (quoting *J.I. Case Credit Corp. v. Crites*, 851 F.2d 309, 311 (10th Cir. 1988)).

[8]*Harolds Stores, Inc. v. Dillard Dep't Stores*, 82 F.3d 1533, 1546-47 (10th Cir. 1996) (citation omitted).

[9]*Ryder v. City of Topeka*, 814 F.2d 1412, 1418 (10th Cir. 1987).

[10]*Lucas v. Dover Corp.*, 857 F.2d 1397, 1400 (10th Cir. 1988) (internal quotations and citations omitted).

[11]*Id*. (internal quotation and citation omitted).

[12]*Burton v. R.J. Reynolds Tobacco Co.*, 208 F. Supp. 2d 1187, 1192 (D. Kan. 2002) (citations omitted).

in favor of the moving party if 'there is no legally sufficient evidentiary basis . . . with respect to a claim or defense . . . under the controlling law."[13]

2.  Motion for New Trial

A motion for new trial may be granted by the court, on all or some of the issues, after a jury trial pursuant to Fed.R.Civ.P. 59(a). Motions for new trial are committed to the discretion of the trial court.[14] They are "not regarded with favor and should only be granted with great caution."[15] The party seeking to set aside a jury verdict must demonstrate that the verdict is not based on substantial evidence.[16] In making that determination, the court's "inquiry focuses on whether the verdict is clearly, decidedly or overwhelmingly against the weight of the evidence."[17] The court must view the evidence in the light most favorable to the prevailing party.[18]

3.  Pregnancy Employment Discrimination

Title VII declares it an unlawful employment practice for an employer to discriminate against any individual with respect to the terms, conditions, or privileges of employment based on the employee's sex.[19] In 1978, the Pregnancy Discrimination Act amended Title VII and brought

---

[13] *Id.* (citing *Deters v. Equifax Credit Info. Servs., Inc.*, 202 F.3d 1262, 1268 (10th Cir. 2000) (quoting *Harolds*, 82 F.3d at 1546-47))).

[14] *Hinds v. Gen. Motors Corp.*, 988 F.2d 1039, 1046 (10th Cir. 1993).

[15] *United States v. Kelley*, 929 F.2d 582, 586 (10th Cir. 1991).

[16] *White v. Conoco, Inc.*, 710 F.2d 1442, 1443 (10th Cir. 1983).

[17] *Black v. Hieb's Enters., Inc.*, 805 F.2d 360, 363 (10th Cir. 1986).

[18] *Escue v. N. Okla. Coll.*, 450 F.3d 1146, 1156 (10th Cir. 2006).

[19] Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1).

pregnancy within the definition of sex discrimination.[20] Accordingly, pregnancy discrimination cases are analyzed in the same manner as any other Title VII employment discrimination claims.

A plaintiff may prove discrimination by providing either direct or indirect evidence of discrimination. Direct evidence of discrimination in these types of cases is rare. When direct evidence of discrimination is not offered or found, the *McDonnell Douglas* burden-shifting analysis is applied to the indirect evidence offered.[21] Under the *McDonnell Douglas* analysis, the plaintiff bears the initial burden of establishing a prima facie case of discrimination.[22] If a prima facie case is established, the burden shifts to the defendant to show that there is a legitimate, nondiscriminatory reason for the adverse employment action.[23] If a legitimate reason is offered, the burden shifts back to the plaintiff to show that the proffered explanation is a pretext for unlawful discrimination.[24]

To establish a prima facie case, a plaintiff ordinarily must show "that (1) the plaintiff belongs to some protected class, (2) the plaintiff was qualified for the position or benefit at issue, (3) the plaintiff suffered an adverse employment action, and (4) the plaintiff was treated less favorably than others. . . ."[25]

---

[20]*See E.E.O.C. v. Ackerman, Hood & McQueen, Inc.*, 956 F.2d 944, 947 (10th Cir. 1992) (PDA added to Title VII "to prevent the differential treatment of women in all aspects of employment based on condition of pregnancy.") (quoting *Carney v. Martin Luther Home, Inc.*, 824 F.2d 643, 646 (8th Cir.1987)).

[21]*McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 801-05 (1973).

[22]*Id.*

[23]*Id.*

[24]*Id.*

[25]*Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1201 (10th Cir. 2006) (citation omitted).

**OPINION**

1. <u>Propriety of Grounds Relied Upon for Defendant's Motion</u>

Plaintiff first asserts that Defendant's motion for judgment made at the close of Plaintiff's evidence did not include the grounds upon which Defendant now relies in support of its motion, and that therefore these omitted grounds cannot form the basis for judgment as a matter of law after a jury verdict has been rendered. It is true, as Plaintiff alleges, that issues not raised in a motion at the close of plaintiff's evidence may not be relied upon in a motion for judgment following the jury's verdict.[26] However, this rule requires only that the grounds for the motion be "stated with sufficient certainty to apprise the court and opposing counsel of the movant's position with respect to the motion" but it "does not require technical precision in stating the grounds for the motion."[27]

When Defendant made its motion for judgment as a matter of law pursuant to Rule 50 at the close of Plaintiff's evidence, it argued in support of the motion that the evidence in this case did not support any of Plaintiff's claims, such that a reasonable jury could not find in favor of Plaintiff as a matter of law. Defendant argued that the jury had heard not evidence from Plaintiff's case in chief that any decision made by Defendant was based on Plaintiff's pregnancy, but that all of the evidence was based solely on her performance, after she had been afforded the same training as everyone else. These are virtually the same grounds relied upon by Defendant in the current motion. Plaintiff's complaint that Defendant's oral argument "did not articulate anything about Plaintiff failing to set forth a prima facie case or failing to present sufficient pretext evidence" is requiring far too much technical precision. The Court is comfortable in finding that Defendant's grounds argued orally at

---

[26]*Hinds*, 988 F.2d at 1045 (citing *Farmers Ins. Co. v. Hubbard*, 869 F.2d 565, 570 (10th Cir. 1989)).

[27]*United Int'l Holdings, Inc. v. Wharf (Holdings) Ltd.*, 210 F.3d 1207, 1229 (10th Cir. 2000) (citing 9A Wright & Miller, *Federal Practice and Procedure* § 2533 (1995)).

trial and in motion and brief post-trial are substantially the same, and it denies Plaintiff's argument that the motion may not now be heard upon these grounds.

    2.    <u>Analysis of Defendant's Motion for Judgment as a Matter of Law</u>

The *McDonnell Douglas* analysis is typically employed in consideration of a motion for summary judgment. As noted above, under *McDonnell Douglas* to establish a prima facie case, a plaintiff ordinarily must show "that (1) the plaintiff belongs to some protected class, (2) the plaintiff was qualified for the position or benefit at issue, (3) the plaintiff suffered an adverse employment action, and (4) the plaintiff was treated less favorably than others. In its order denying summary judgment, the Court employed these standards and held that Plaintiff easily met her prima facie burden with respect to the first and third elements. With respect to the second element, the Court determined after analysis that there was some evidence supporting her claim that she was qualified for the position at the time she was terminated, since she was apparently deemed qualified at the time she was hired, and she was terminated only a month later. With respect to the fourth element, the Court determined that since it was clear that she was terminated during her training, while other H.R. Specialists were retained during their own training, and her position was not eliminated at that time, that Plaintiff had "perfunctorily established" this element. Therefore, the Court held that she had established her prima facie case.

Since Defendant provided evidence to clearly and articulately support as its legitimate, non-discriminatory reasons for terminating Plaintiff that she was inadequately progressing with her training, the burden shifted back to the Plaintiff to provide evidence that the proffered reasons were pretextual. Again, for purposes of the summary judgment motion, the Court found Plaintiff met this burden with adequate evidence. Whether or not that evidence was credible and worthy of

acceptance was a question for the jury, so the Court denied Defendant's motion for summary judgment.

Although the *McDonnell Douglas* test is typically employed in a summary judgment context, it is not inapplicable to a trial. That framework "established an allocation of the burden of production and an order for the presentation of proof in Title VII discriminatory-treatment cases."[28] Establishment of a prima facie case by the employee creates a presumption of unlawful discrimination against the employee by the employer, which places upon the defendant/employer "the burden of 'producing evidence' that the adverse employment actions were taken 'for a legitimate, nondiscriminatory reason.'"[29] In response to this burden, the employer/defendant must demonstrate through the production of admissible evidence "reasons for its actions which, *if believed by the trier of fact*, would support a finding that unlawful discrimination was not the cause of the employment action."[30] Notwithstanding the shifting burden of production, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff."[31]

If the defendant carries the burden of production, then the shifting burdens become irrelevant and the plaintiff must persuade the trier of fact that defendant's proffered legitimate, nondiscriminatory reason was not the true reason for the adverse employment action, but that an illegal, discriminatory reason was, and that the plaintiff has therefore been the victim of intentional

---

[28]*St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 506 (1993).

[29]*Id*. at 506-07 (quoting *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 254 (1981).

[30]*Id*. at 507 (emphasis in original).

[31]*Id.* (citation omitted).

discrimination.³² It is at this point that the "familiar *McDonnell Douglas* ping-pong analysis is [deemed] unnecessary at trial: Instead, the ultimate test is whether plaintiff has produced enough credible evidence to persuade the trier of fact that defendant acted with discriminatory intent and that such intent caused plaintiff's injury."³³

Plaintiff is also entitled to a verdict if she simply persuades the jury through sufficient, competent evidence that Defendant's proffered reasons for the adverse employment action are pretextual and unworthy of belief, for where jurors "disbelieve an employer's proffered explanation they may – but need not – infer that the employer's true motive was discriminatory[,]"³⁴ and this inference may be made by the jury without the necessity of any evidence, direct or indirect, of discriminatory intent.

The issue presented to the jury, therefore, and for which Plaintiff bore the ultimate burden of proof, was Plaintiff's claim that she was fired because Defendant did not want a pregnant employee in the position and it therefore took steps motivated by its unlawful discrimination against her pregnancy to manufacture a pretense for firing her; versus Defendant's assertion that she was fired for failing to master her training after having been given similar training (indeed, an extended period of training) to others who had mastered it. For Plaintiff to prevail, she had to sustain her burden of persuading the jury from sufficient, competent evidence either that Plaintiff's claim was believable, or that Defendant's claim was unbelievable.

---

³²*Id*. at 508.

³³*Dodoo v. Seagate Tech., Inc.*, 235 F.3d 522, 528 (10th Cir. 2000).

³⁴*Townsend v. Lumbermens Mut. Cas. Co.*, 294 F.3d 1232, 1241 (10th Cir. 2002). *See also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 146-49 (2000) and *Miller v. Eby Realty Group*, 2003 WL 22102137 (D. Kan. Aug 20, 2003) *aff'd,* 296 F.3d 1105 (10th Cir. 2005).

Plaintiff did not produce sufficient, competent evidence to create a factual question that there was a reasonable probability that Defendant engaged in illegal discrimination against her on account of her pregnancy. Nor did she produce sufficient, competent evidence to create a factual question that there was a reasonable probability that Defendant's stated reasons for her termination were pretextual and unworthy of belief. Other than Plaintiff herself, none of Plaintiff's witnesses testified that Plaintiff was succeeding at her training, nor that Plaintiff's training was materially different and substandard from the training that others received, nor that Defendant had discriminatory intent towards pregnant employees in general nor towards Plaintiff's pregnancy in particular. Plaintiff's subjective evaluation of whether her own performance was satisfactory is not relevant to counter evidence of management's evaluation.[35] Other than Plaintiff's uncorroborated suspicions of discrimination, the jury had nothing but unsupported speculation[36] to support a finding of illegal discrimination. This is inadequate to support the jury verdict.

Therefore, Defendant's motion and renewed motion for judgment as a matter of law are granted. A final judgment on the merits shall be entered in Defendant's favor, contemporaneously with this written order.

---

[35] *Kitchen v. Burlington Northern & Santa Fe Ry. Co.*, 298 F. Supp. 2d 1193, 1202 (D. Kan. 2004) (citing *Furr v. Seagate Tech., Inc.*, 82 F.3d 980, 988 (10th Cir. 1996) (citing *Branson v. Price River Coal Co.*, 853 F.2d 768, 772 (10th Cir. 1988)). *See also Salguero v. City of Clovis*, 366 F.3d 1168, 1176 (10th Cir. 2004); *Tran v. Trustees of State Colls. of Colo.*, 355 F.3d 1263, 1270 (10th Cir. 2004).

[36] In its argument for a new trial, Defendant complains of the Court's admission of Plaintiff's exhibit 119 over its objection. This exhibit demonstrated which computer devices were available for searching in discovery and which were not. While the Court does not agree that its admission of this exhibit - after Defendant "opened the door" - was error, it is possible that the jury may have relied upon this exhibit in reaching its verdict. Assuming without deciding that to be the case, such reliance would have been tantamount to rank speculation, and would have been an improper basis for a verdict.

In light of this ruling, Defendant's Motion in the Alternative for a New Trial is denied as moot, and Plaintiff's Motion for Award of Attorney's Fees and her Motion for Discovery as to Defendant's Fees and Expenses are denied as moot.

**IT IS THEREFORE ORDERED** that Defendant's Motion for Judgment as a Matter of Law (Doc. 175) and Defendant's Renewed Motion for Judgment as a Matter of Law (Doc. 186) are hereby GRANTED.

**IT IS FURTHER ORDERED** that a final judgment on the merits be entered in Defendant's favor contemporaneously with this written order.

**IT IS FURTHER ORDERED** that Defendant's Motion in the Alternative for New Trial (Doc. 186) is DENIED as moot.

**IT IS FURTHER ORDERED** Plaintiff's Motion for Award of Attorney's Fees (Doc. 188) and Plaintiff's Motion for Discovery as to Defendant's Fees and Expenses (Doc. 205) are hereby DENIED.

**IT IS SO ORDERED.**

Dated this 1st day of December, 2010, in Wichita, Kansas.

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE